UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONTINENTAL INSURANCE COMPANY,

    Plaintiff,

vs.

                                            CASE NO:  8:05-cv-1658-T-17MSS

POLLY ROBERTS and
STEPHEN GIMOPOULOS,

    Defendants.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on three separate motions: 1) Defendant and Counter-Plaintiff, Polly Roberts' (hereafter "Roberts"), Motion for Partial Summary Judgment, filed on December 7, 2007 (Dkt. 135); 2) Defendant and Counter-Plaintiff, Stephen Gimopoulos' (hereafter "Gimopoulos), Motion for Summary Judgment, filed December 7, 2007 (Dkt. 138); and 3) Plaintiff and Counter-Defendant, CONTINENTAL INSURANCE COMPANY's (hereafter "Continental"), Motion for Partial Summary Judgment, filed on December 7, 2007 (Dkt. 136).  Roberts' and Gimopoulos' (hereafter "Defendants") motions will be analyzed together as they address some of the same issues and adopt each other's arguments.  For the reasons set forth below, the Defendants' Motions for Summary Judgment are **GRANTED in part and DENIED in part** and Continental's Motion for Partial Summary Judgment is **DENIED**.

## FACTS

This case arises out of an incident (hereafter "the incident") that occurred on or about July 1, 2001. Roberts and Gimopoulos were entertaining James Jamro (hereafter "Jamro"), a close friend of Gimopoulos, and Jamro's then-girlfriend Kimberly White (hereafter "White") on a boat owned by Roberts and insured by Continental. The driver stopped the boat allowing everyone to view dolphins swimming in that area. While the boat was stopped, it drifted out of the channel and into shallow water. Without warning, Gimopoulos dove out of the boat and sustained serious injuries. Exactly who was driving the boat prior to Gimopoulos diving into the water is a fact the parties dispute. Defendants Roberts and Gimopoulos as well as Jamro claim that Roberts was driving the boat. White originally gave a recorded statement to an investigator hired by Continental that was consistent with all three other passengers. However, on August 9, 2005, she testified during her sworn deposition that Gimopoulos was driving. Explaining the inconsistency with her prior statement, White stated she had been pressured by Jamro, now her ex-boyfriend, to lie and claim that Roberts was driving.

Continental first became aware of the incident on May 21, 2002, roughly ten and a half months after Gimopoulos sustained his injuries. Roberts did not inform Continental of the incident. Rather, Continental learned of the incident when it received a letter from Giampoulos' attorney demanding $100,000.00. Believing that Roberts was in fact driving the boat at the time of the incident, Continental advised Gimopoulos that it would pay him $25,000.00 plus $1,000.00 for medical expenses. The policy limit for a claim by a member of the insured's family was $25,000.00. Gimopoulos rejected Continental's offer claiming that he was not a member of Roberts' household and was,

therefore, entitled to $100,000.00, the maximum possible payment allowed by the policy.

The parties were unable to reach an agreement as to the issue of whether Gimopoulos was a member of Roberts' household. In a previous federal case (hereafter "*Limits Action*"), the court interpreted the policy's ambiguity and held that Gimopoulos was not a member of Roberts' household. Thus, the $100,000.00 policy was applicable. Continental almost immediately offered Gimopoulos the full $100,000.00 policy limit. Gimopoulos rejected the offer and subsequently filed suit against Continental and Roberts in the Circuit Court of the Sixth Judicial District on May 30, 2003. That suit (hereafter "*Gimopoulos I*") was voluntarily dismissed by Gimopoulos in July of 2003. Two months later, Gimopoulos filed another suit (hereafter "*Gimopoulos II*") against Roberts in the Circuit Court of the Sixth Judicial District. Throughout *Gimopoulos II*, both Roberts and Gimopoulos continued to claim that Roberts was driving the insured boat at the time.

The insurance policy issued by Continental covered Roberts' boat over the period of April 6, 2001 to April 6, 2002. Notwithstanding the policy limits regarding claims, the policy included other limitations and clauses. The policy stated that Roberts was to make no admissions of guilt. However, in her answer to *Gimopoulos II*, Roberts admitted that she was responsible for the incident and did not present a single affirmative defense. Gimopoulos then served a Proposal for Settlement in *Gimopoulos II*, offering to settle his claim for $2.5 million dollars, which Continental refused. One month later, Continental learned of White's deposition testimony in which she adamantly reiterated that it was Gimopoulos and not Roberts who was driving the boat. This was the first time Continental had reason to believe that Gimopoulos and not Roberts was driving the boat

at the time of the incident. Continental, believing it owed Gimopoulos nothing because of the alleged fraud, subsequently withdrew its original settlement offer of $100,000.00. Continental argues that the policy issued to Roberts contained no coverage in the instance of fraud. The parties were unable to reach any sort of settlement agreement and the case proceeded in State Court.

After three different attorneys withdrew from representation of Roberts, Continental offered to retain a fourth. Roberts however, turned down that offer and chose to proceed at trial *pro se*. It is uncontested that during that trial, Roberts waived her right to a jury trial, offered no evidence to support her position, and failed to question any of Gimopoulos' witnesses. As a result, the state court found in favor of Gimopoulos and rendered judgment against Roberts.

## STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. The Court's determination that no genuine issue of material fact exists shall be based on the totality of the evidence presented in the "pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits submitted." *Id.* A material fact is one that "might affect the outcome of the suit under the governing law." *Allen v. Tyson Foods, Inc.* 121 F.3d 642 (11th Cir. 1997) citing *Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 248 (1986). There is no genuine issue of material fact if "the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party…" *Matsushita Elec. Indus. Co. v. Zenith Radio Copr.,* 475 U.S. 574, 587 (1986).

Initially, the moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-324 (1986). A common way for the moving party to meet its burden is by demonstrating that the non-moving party cannot show the essential elements of his case. *Riley v. Newton*, 94 F.3d 632, 638-639 (1th Cir. 1996). In determining whether the burden has been met, the court must view the evidence presented in a light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). The non-moving party must receive the benefit of all favorable inferences that can be drawn from the party's evidence. *Id.*

Once the moving party has properly supported its motion for summary judgment, the non-moving party must go beyond the pleadings to show that a genuine issue exists for trial. *Id.* The non-moving party must come forward with evidence sufficient to establish the existence of the essential elements of its case, which the non-moving party will have the burden to prove at trial. *Id.* The non-movant may not rest upon mere allegations or denials. *Liberty Lobby* at 477 U.S.249. The non-movant can meet this burden by presenting enough evidence to show that a reasonable finder of fact could find for the non-movant. *Allen* 121 at 646. The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 249.'

# DISCUSSION

I. THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

   A.  WHETHER SUMMARY JUDGMENT IS APPROPRIATE AS
       TO COUNT I, THE CLAIM OF FRAUD AND CONCEALMENT
       AND COUNT IV, THE CLAIM OF FRAUD.

Barring an insured from profiting from his or her own fraud is fundamental law that requires little explanation. *Chaachou v. American Central Ins. Co.,* 241 F.2d 889, 892 (5th Cir. 1957).  Gimopoulos and Roberts have consistently maintained that it was the insured who was driving the boat when the incident occurred.  If Gimopoulos and not Roberts was driving the boat, both Roberts and Gimopoulos have repeatedly misrepresented to Continental the identity of the driver.  This Court will not allow Roberts or Gimopoulos to profit if they have fraudulently misrepresented a material fact in an attempt to collect from Continental.

       i. Whether A Misrepresentation Need Be "Material," And If
          So, Whether It Need Be Relied Upon By The Injured Party

A misrepresentation is material even if it causes only very slight harm. *Casey v. Cohan,* 740 So. 2d 59, 62 (Fla. 4th DCA 1999).  It is sufficient that a pecuniary loss has resulted from the misrepresentation if the misled party has very slightly been prejudiced, if the amount is at all appreciable. *Id.*  While being deposed in *Gimopoulos II*, experts for both Gimopoulos and Roberts testified that the identity of the driver would have a significant impact on Roberts' liability.  This Court agrees, finding that the amount of liability Roberts' owes to Gimopoulos would most certainly be affected by whether or not she was driving the boat at the time of the incident.

A court will not require an insurer to demonstrate that it relied on the insured's misrepresentations when asserting a policy defense based on fraud; rather, a showing that a material fraud was perpetrated by an insured in pursuing an insurance claim is sufficient to prevail. *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 922-23 (11th Cir. 1998). This Court does not need to find that Continental relied upon the misrepresentation in order to establish that Roberts and Gimopoulos have acted fraudulently. Rather, it need only find that Roberts and Gimopoulos perpetrated a material fraud. If in fact, Gimopoulos and not Roberts was driving, they have committed a material fraud and this Court will not allow them to profit.

Whether or not Gimopoulos and Roberts have committed a material fraud is an issue of fact and not one of law. Therefore, it is an issue for the trier of fact to decide. This Court finds that a reasonable juror could find material fraud given White's sworn testimony that Gimopoulos and not Roberts was driving the boat at the time of the incident. Furthermore, White testified that she was pressured to testify to the contrary. Because there is a material issue of fact, summary judgment on the issue is not appropriate. Accordingly, this Court **DENIES** Defendants' Motion for Summary Judgment as to **Counts I and IV**.

### B. WHETHER SUMMARY JUDGMENT IS APPROPRIATE AS TO COUNT II, THE CLAIM FOR BREACH OF DUTY.

To constitute the breach of an insurance policy for failure to cooperate, the lack of cooperation must be material and the insurance company must show that it was substantially prejudiced in the particular case. *American Fire and Casualty Co. v. Vliet* 148 Fla. 568 (Fla. Sup. Ct. 1941); *Ramos v. Northwestern Mut. Ins. Co.* 336 So. 2d 71, 75

(Fla. 1976). The Florida Supreme Court addressed the issue of failing to cooperate in both *Vliet* and *Ramos*. The court held in both cases that the failure to cooperate must materially prejudice the insurer.

Whether or not a policyholder's failure to cooperate was material is ordinarily a question of fact that must be submitted to the jury. *Diaz v. State Farm Mut. Auto. Ins. Co.,* 293 F.2d 298, 299 5th Cir. 1961) (applying Florida law). The question before this Court at this time is whether a reasonable juror could find that Roberts failed to cooperate and whether her failure to cooperate substantially prejudiced Continental.

### i. <u>Whether Roberts Failed to Cooperate</u>

It is uncontested that Roberts chose to proceed *pro se* during *Gimopoulos II*. It is further undisputed that Roberts had three different attorneys provided to her by Continental. Each attorney withdraw citing personal differences with Roberts. Regardless of what specifically the differences were, Continental offered to retain a fourth attorney for Roberts prior to *Gimopoulos II*. Roberts turned down that offer and proceeded *pro se*. This Court is in no way suggesting that proceeding *pro se* in and of itself constitutes a failure to cooperate. However, a reasonable juror could find that Roberts did much more than just proceed *pro se*. Specifically, and most importantly, are the allegations that Roberts admitted liability for the incident, did not present a single witness in her defense, nor did she cross-examine any of Gimopoulos' witnesses. Thus, this Court believes that a reasonable juror could find that Roberts failed to cooperate with Continental if it finds the aforementioned allegations credible

### ii.  If Roberts' Actions Are Found To Constitute A Breach, Was The Breach Substantially Prejudiced Continental

If in fact a Roberts did fail to cooperate, this Court finds that a reasonable juror could find that the failure to cooperate substantially prejudiced Continental's position. There is no way of knowing what exactly would have happened had Roberts not admitted liability, or had she produced a defense witness, or had she cross-examined any or all of Gimopoulos' witnesses.  It seems however to be quite clear that each of those fact by themselves puts Continental in a much more prejudiced position.  That is, Continental's position get less and less prejudicial as each of those allegations are removed from the scenario.  Considering the facts as a whole, it certainly seems plausible that a reasonable juror could find that Continental was put in a much worse position by Roberts actions.

Because a reasonable juror could find that Roberts failed to cooperate with Continental, and because a reasonable juror could find that failure to cooperate substantially prejudiced Continental, there are genuine issues of fact for trial.  Thus, this Court **DENIES** Roberts' Motion for Summary Judgment on **Count II.**

### C.  WHETHER SUMMARY JUDGMENT IS APPROPRIATE AS TO COUNT VI, CIVIL CONSPIRACY.

Roberts, within her Motion for Summary Judgment claims, that there is no actionable tort as to Count VI.  As mentioned in the standard of review, once the moving party has alleged a material issue of fact, the burden shifts to the non-moving party to prove that there is in fact no material issue of fact.  Nowhere in it's opposition to the summary judgment, does Continental respond to Roberts' claim that there is no actionable tort as to Count VI.  Thus the non-moving party, Continental, has failed to

meet its burden and prove that there is a material issue of fact.  Accordingly, this Court **Grants** Roberts' Motion for Summary Judgment as to **Count VI.**

### II. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

#### A. WHETHER SUMMARY JUDGMENT IS APPROPRIATE BECAUSE EITHER FLORIDA CLAIMS ADMINISTRATION STATUTE § 647.426 (2) IS INAPPLICABLE OR BECAUSE CONTINENTAL HAS COMPLIED WITH THE STATUTE.

Gimopoulos has claimed that Continental is barred from asserting fraud and breach of cooperation because Florida Claims Administration § 647.426(2) (hereafter "§ 627.426(2)") precludes "coverage defenses."  In response, Continental has filed a Motion for Summary Judgment arguing that the statute is inapplicable because there can be no "coverage defense" where there is no coverage.  Continental has further argued that even if this Court is to find this statute applicable, Continental has fully satisfied the requirements of the statute.

##### i. Whether Continental's Fraud Claims Are "Coverage Defenses"

Continental argues that the alleged fraud committed by Roberts and Gimopoulos immediately revoked any and all coverage provided by the policy.  As the foundation for its argument, Continental points to the express language within the policy it issued to Roberts.  The relevant portion of the statute states:

> **Fraud and Concealment**
>
> There is no coverage from the beginning of this policy if you or your agent has omitted, concealed, misrepresented, sworn falsely, or attempted fraud in reference to any matter relating to this insurance before or after any loss.

Continental argues that because there is no coverage, §627.426(2) is inapplicable. The Florida Supreme Court has previously held that, there can be no "coverage defense" where no coverage exists at all. *AIU Ins. Co. v. Block Marina Investment*, 544 So. 2d 998 (Fla. 1989). Examining §627.426(2), the court explained that the term "coverage defense" means a defense to coverage that otherwise exist. *Id.* The term is not construed to include a defense against liability where there is absolutely no coverage for the loss sustained. *Id.* The court specifically stated that a failure to comply with the statute does not bar the insurer from disclaiming liability where the policy expressly excludes coverage. *Id.* As Continental points out in its motion, Florida courts have routinely followed *Block Marina*, explaining that a coverage defense cannot exist where there is no coverage in the first place. *State Farm Mut. Auto. Ins. Co. v. Hinestrosa*, 614 So. 2d 633, 635 (Fla. 4th DCA 1993). The Third District Court of Appeals has previously held that § 627.426(2) is "wholly inapplicable to a defense of no coverage." *Accord Almendral v. Security Nat'l Ins. Co.,* 704 So. 2d 728, 730 (Fla. 3rd DCA 1998).

Thus, because the express language of the statute states that there is no coverage where fraud exists, there can be no "coverage defense" in this case. That is, either Roberts and Gimopoulos were fraudulent and there is no coverage, or they were not fraudulent and the claims of fraud and concealment should fail. In either scenario, Continental is not making a coverage defense. Therefore, §627.426(2) is inapplicable to this case.

### ii. At This Point, Whether It Even Matters If Continental Has Satisfied The Requirements Of § of 627.426(2).

While this Court finds the issue of a "coverage defense" wholly irrelevant to the claims of fraud and concealment, as Continental points out, satisfaction of § 627.426(2) may be relevant to the breach of cooperation clause claim. However, Continental's satisfaction of § 627.426(2) only becomes relevant if in fact there was a failure to cooperate. Whether or not Roberts failed to cooperate is an issue of fact and not one of law. Accordingly, the issue of whether Roberts failed to cooperate must be presented to the trier of fact. If the factfinder finds a failure to cooperate, Continental would then have to show that it complied with § 627.426(2). Likewise, if the factfinder finds that there was not a failure to cooperate, the "coverage defense" can no longer be asserted and §627.426(2) becomes inapplicable.

In addressing the Defendants' Motions for Summary Judgment, this Court found sufficient facts to a reasonable juror to find that Roberts failed to cooperate. Consistent with that holding, this Court finds that there are sufficient facts to find that Roberts did not fail to cooperate. As mentioned previously, it certainly cannot be said that proceeding *pro se* is in and of itself is a failure to cooperate. However, as previously analyzed, Continental alleges that Roberts did much more than simply proceed *pro se*. This Court is not however prepared to determine that Roberts did or did not cooperate without first submitting the issue to the trier of fact.

Thus, because the issue of whether or not Continental can disclaim liability through the use of a "coverage defense" only becomes relevant if in fact Roberts failed to cooperate and because the trier of fact must determine that issue, summary judgment on

this matter is therefore inappropriate. Accordingly, Continental's Motion for Partial Summary Judgment pursuant to § 627.426(2) is **DENIED.**

    B. <u>**Whether The Defendants Are Judicially and Collaterally Estopped From Disputing The Reasonableness Of Continental's Coverage Position.**</u>

Continental has filed a Motion for Partial Summary Judgment claiming that Gimopoulos and Roberts are judicially and collaterally estopped from disputing the reasonableness of Continental's coverage position. Continental argues that each doctrine standing alone prohibits the Defendants from arguing that Continental acted unreasonably.

    i. **Whether The Defendants Are Judicially Estopped From Disputing The Reasonableness Of Continental's Coverage Position.**

Judicial estoppel is an equitable doctrine used to prevent litigants from taking wholly inconsistent positions in separate judicial proceedings. *Blumberg v. USAA Cas. Ins. Co.*, 790 So.2d 1061, 1066 (Fla. 2001). Courts consider two factors in determining whether to apply the doctrine: 1) whether the allegedly inconsistent positions were made under oath, and 2) whether such inconsistencies were made under oath in a prior proceeding were calculated to make a mockery of the judicial system. *Coachmen Indus. V. Royal Surplus Lines Ins. Co.*, 2007 U.S. Dist. LEXIS 46134 (M.D. Fla. 2007). There can be no dispute that Gimopoulos' position in the *Limits Action* were made under oath. Thus, there is no question that the first element is satisfied. Whether Gimopoulos' position in the *Limits Action* was calculated to make a mockery of the judicial system is not as simple of an issue.

It is necessary to first to discuss the purpose of Gimopoulos' position in the *Limits Action*. The purpose of the *Limits Action* was to determine which interpretation of the policy was most reasonable and therefore applicable. Gimopoulos did not have to convince the court that Continental's interpretation of the policy limits was unreasonable to prevail. Rather, he need only show that his interpretation was more reasonable than Continental's. Thus, Gimopoulos' position was that even if Continental's interpretation was reasonable, his was even more so.

Furthermore, under *Blumberg*, a party must make wholly inconsistent for the doctrine of judicial estoppel to apply. This Court cannot agree that Gimopoulos has taken wholly different positions on the issue. He argued then and he argues now that Continental did not interpret the policy in the most reasonable manner possible. Thus, the only inconsistency can be semantics at best. For the purpose of this particular issue, this Court finds no inconsistency between Gimopoulos arguing that Continental was "unreasonable" and that even if Continental was reasonable, it was not a reasonable as it could have been and should have been.

Because Gimopoulos has not taken wholly inconsistent positions he could not have therefore calculated his supposedly differing positions to make a mockery of the court. Thus this Court finds that the doctrine of judicial estoppel is inapplicable.

      **ii. Whether The Doctrine Of Collateral Estoppel Bars Gimopoulos From Disputing the Reasonableness of Continental's Coverage Position.**

Continental further argues that even if the doctrine of judicial estoppel does not apply, Gimopoulos is barred from disputing the reasonableness of Continental's coverage position under the doctrine of collateral estoppel. Collateral estoppel bars relitigation of

an issue previously decided if the party against whom the prior decision had a "full and fair opportunity" to litigate the same issue in an earlier case. *Coachmen Ins.* at 19. There is a four part test that need be fulfilled to apply the doctrine: 1) the issue in the pending case is identical to that decided in the prior proceeding; 2) the issue was necessarily decided in a prior proceeding; 3) the party to be estopped was a party or was adequately represented by a party in the prior proceeding; and 4) the precluded issue was actually litigated in the prior proceeding. *Id.*

This Court cannot agree that the issue before it now is identical to the issue in the *Limits Action*. As mentioned previously, the issue before this Court in the *Limits Action* was to determine an ambiguity in the policy issued by Continental. Specifically, the issue was whether Gimopoulos should be considered a member of Roberts' household or not. The issue in this case, per Gimopoulos' counterclaim, is whether or not Continental acted in bad faith. While related those are not identical issues and therefore, the first element of collateral estoppel cannot be satisfied. Because the there are not identical issues, it cannot be said that the issue was necessarily decided in a prior proceeding. Thus, the second element also fails. There is no dispute that both parties were adequately represented during the *Limits Action* and the third element is therefore satisfied. It cannot however be said that issue before this Court now was actually litigated in the prior proceeding because very simply it was not. Because there are two different issues, it cannot be possible that the same issue was actually litigated in the *Limits Action*. Thus, the fourth element also fails.

The issue of whether the policy should have been interpreted to consider Gimopoulos a member of Roberts household is not identical to the issue of whether Continental acted in bad faith in coming to its own interpretation.  Because this Court is not hearing an identical issue to one previously litigated, the doctrine of collateral estoppel cannot apply

Therefore, because neither the doctrine of judicial estoppel nor the doctrine collateral estoppel are applicable to the issue before this Court, summary judgment is not appropriate.  Therefore, Continental's Motion for Partial Summary Judgment is **DENIED.** Accordingly, it is

**ORDERED** that: 1) Defendants' Motion for Summary Judgment as to **Counts I and IV** is **DENIED**; 2) Defendants' Motion for Summary Judgment as to **Count II** is **DENIED**; 3) Defendants' Motion for Summary Judgment as to **Count VI** is **GRANTED**; and 4) Continental's Motion for Partial Summary Judgment under § 647.426 and under the doctrines of judicial and collateral estoppel is **DENIED**;

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 18th day of April, 2008.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Cc: All Parties and Counsel of Record